IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAN STEVENS, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Criminal Action No.: 1:10-cr-446 |
| ) | Civil Action No.: 1:14-cv-637 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Jan Stevens' Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 348). For the reasons stated herein, and for good cause shown, the motion is DENIED.

## BACKGROUND

From June to October 2010, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted an undercover investigation involving Petitioner and other co-conspirators. In June 2010, an ATF confidential informant introduced three undercover law enforcement officers ("UCs") to Defendant Phun, who was based in Philadelphia. During the meeting, they discussed Phun's large-scale marijuana trafficking as well as a potential armed robbery of a narcotics "stash house" in Virginia. Following this initial meeting, Phun met with the UCs from June 2010 to October 2010, exchanging contraband cigarettes for marijuana.

On October 6, 2010, Phun met with the UCs in Fairfax County, Virginia to discuss the logistics of the stash house robbery. The UCs provided Phun with pictures of motels, explaining that these were the locations where one UC had previously picked up kilograms of cocaine. The UC explained that when he arrived to collect the drugs, he observed ten kilograms of cocaine and

was met by three or four armed individuals. Phun then explained that he had access to ballistic vests as well as FBI raid jackets and hats, and that he and his associates could pose as law enforcement during the robbery. The UCs informed Phun that the cocaine would arrive at the stash house in three weeks.

On October 21, 2010, the UCs met with Phun, Defendant Johnson, and a third unnamed individual at a Famous Dave's restaurant in Philadelphia to discuss the upcoming robbery. The UCs explained the seriousness of the robbery and questioned the Defendants' desire to conduct it. Defendants agreed that they wished to go through with it. Johnson confirmed that the crew would bring their own firearms for the task. At the end of the meeting, the UCs informed Defendants that the cocaine would arrive in Virginia the following Thursday. Defendants agreed that they would travel to Virginia on Wednesday and conduct the robbery on Thursday.

On October 28, 2010, the remaining Defendants, including Petitioner, arrived in Virginia to conduct the robbery. Defendant Un contacted the UCs and arranged to meet at a gas station in Fairfax County, Virginia. Around 11am, the UC arrived at the gas station where Defendants were parked in a white Suburban. Un and Johnson approached the UC where they shook hands. The UC then advised the Defendants to follow him to a storage facility where the rental car to be used for the robbery was located.

After following the UCs to a storage facility, Defendants Un, Johnson, and Min indicated that they were ready to do the job, and stated that the firearms were in the white Suburban. After more discussion, the UC suggested that they transfer the firearms from the Suburban to the rental. Un then walked to the Suburban and engaged in conversation with Defendant McCalister and Petitioner. Ten minutes later, McCalister and Petitioner exited the car and walked towards the storage unit, concealing firearms under their clothes and in their pockets.

They then placed the guns in a compartment inside the rental car. Petitioner and McCalister then joined the rest of the group in the storage unit. The UC asked McCalister and Petitioner whether they were ready, and they confirmed they were. At this time, the UC pretended to receive a call from a drug organization member and advised the group that it was time to start the robbery. Law enforcement then moved in and arrested Petitioner and the other defendants.

On November 23, 2010, a federal Grand Jury charged Petitioner in a three-count indictment with conspiring to affect commerce by robbery, possession of a firearm in furtherance of a crime of violence, and conspiring to possess with intent to distribute five kilograms or more of cocaine. Dkt. No. 22. A Grand Jury later charged him in a three-count superseding indictment for the same offenses. Dkt. No. 35.

During trial, the government filed an anticipatory motion to preclude all Defendants except Phun from using the affirmative defense of entrapment. Dkt. No. 60. The Court denied this motion without prejudice. Dkt. No. 107. All Defendants subsequently filed notices of an entrapment defense, to which the government responded with a notice of intent to introduce evidence of uncharged conduct if Defendants used the defense. Dkt. No. 110. In its March 10, 2011 Order, the Court stated that it would allow Defendants to raise the entrapment defense but would permit the government to introduce admissible evidence of prior criminal history if Defendants decided to do so. Dkt. No. 143. As a result, Defendants did not raise the defense.

The jury trial commenced on March 14, 2011. On March 18, 2011, the jury convicted Petitioner of counts one and two, but acquitted him of count three. Dkt. No. 164. On July 1, 2011, the Court entered judgment against Petitioner and sentenced him to 360 months imprisonment with credit for time served. Dkt. No. 234.

On March 22, 2012, Petitioner filed an appeal to the Fourth Circuit, which affirmed his conviction. Dkt. Nos. 241 & 319. On May 16, 2014, Petitioner filed the motion to vacate currently before the Court. Dkt. No. 348.

## ANALYSIS

Petitioner seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation and internal quotation marks omitted). It is well settled that bare, conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

### I. Petitioner Cannot Show that Defense Counsel's Assistance Was Ineffective.

Petitioner asserts that he received ineffective assistance of counsel based upon ten grounds, alleging defense counsel's failure to: (1) contest or challenge the composition of the jury based on exclusions of African-Americans and Asian-Americans; (2) contest the drafting of the indictment, which denied him notice of the charges against him; (3) contest the existence of the alleged conspiracy; (4) contest the sufficiency of the nexus to interstate commerce; (5) contest a jury instruction related to the Hobbs Act; (6) object that a conspiracy cannot be formed between a criminally motivated person and a government agent; (7) allege the existence of multiple rather than a single conspiracy; (8) raise an entrapment defense; (9) challenge the sufficiency of the evidence with respect to the second element of his Hobbs Act conspiracy

charge; and (10) seek dismissal of the indictment pursuant to the "outrageous government conduct" doctrine.

The Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong requires a showing that counsel failed to provide reasonably effective assistance, that is, that counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687–88. This prong presents a high burden because the Court must "presume[] that the defendant's counsel rendered objectively effective performance." *See United States v. Dyess*, 478 F.3d 224, 238 (4th Cir. 2007). The second prong requires the defendant to prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Under this standard, the Court will address each of Petitioner's arguments in turn.

*a. Counsel's Alleged Failure to Contest the Composition of the Jury*

With respect to the first claimed ground of ineffective assistance of counsel, the law is clear: a criminal defendant has a constitutional right to a jury that represents a fair cross-section of the community. *Compare Duren v. Missouri*, 439 U.S. 357, 360 (1979) (holding state statute that granted women an automatic exemption from jury service upon request violated defendant's Sixth and Fourteenth Amendment rights), *with Berghuis v. Smith*, 559 U.S. 314, 331 (2010) (holding defendant's fair cross-section rights were not violated even where he produced some evidence that assignment order led to the underrepresentation of African-Americans in venires).

Unlike the defendants in the cases above, however, Petitioner does not point to any facts or challenge any law that resulted in the alleged systematic exclusion of African-Americans or Asian-Americans from the jury. Defense counsel asserts in his affidavit that he reviewed the

background of potential jurors, conducted research, submitted questions to the Court for use during *voir-dire*, and consulted with co-defendants' counsel to corroborate his assessment of the jury. Dkt. No. 393, ¶ 10. In its *voir-dire*, the Court included proposed questions submitted by defense counsel. *See* Dkt. No. 144. The Court's sidebar discussion with counsel following the *voir-dire*—in which counsel discussed juror strikes—also showed no evidence of systematic exclusions of jurors based upon race. Trial Tr. 62–70. Therefore, because "[c]ounsel is not ineffective for failing to raise an objection or make a motion for which there is 'no obvious basis,'" Petitioner's counsel was not ineffective for failing to object to the composition of the jury under the facts presented here. *See Merica v. United States*, No. 7:07-cv-350, 2007 WL 4561298, at *3 (W.D. Va. Dec. 21, 2007) (quoting *Clanton v. Bair*, 826 F.2d 1354, 1359 (4th Cir. 1987)). Accordingly, the Court denies Petitioner's first ground for ineffective assistance of counsel.

### b. Counsel's Alleged Failure to Contest the Drafting of the Indictment

As to the second claimed ground of ineffective assistance of counsel, the Court already disposed of this issue in its March 3, 2011 Order in response to Petitioner's motion to dismiss the superseding indictment. Dkt. Nos. 64, 107. In denying the motion, the Court stated that "each count properly recites the elements of the offense charged therein against each Defendant." Dkt. No. 107. However, even if the Court had not already decided the matter, the superseding indictment alleged a violation of the substantive charge—that Petitioner knowingly used, carried, or possessed a firearm during a crime of violence, a robbery—as well as violation of the aiding and abetting statute, 18 U.S.C. § 2.[1] Dkt. No. 35. Finally, Petitioner cannot reasonably claim that he was prejudiced by a lack of notice as to the elements of the aiding and

---

[1] Notably, aiding and abetting under the statute "is not an independent crime" and instead serves to abolish the distinction between principals and accessories. *See United States v. Kegler*, 724 F.2d 190, 200 (D.C. Cir. 1983).

abetting charge because he has previously been convicted of aiding and abetting in violation of 18 U.S.C. § 2 and the substantive charge of conspiracy to distribute a controlled substance. *See* Dkt. No. 99, at 1. For these reasons, the Court denies Petitioner's second ground for ineffective assistance of counsel.

### c. Counsel's Alleged Failure to Contest the Existence of the Alleged Conspiracy

With respect to the third claimed ground of ineffective assistance of counsel, the record shows that defense counsel spent "the bulk of the trial" challenging the conspiracy allegations contained in counts one and three. *See* Dkt. No. 393, Trial Tr. 292–98, 353–54, 539–40. Surely in part due to defense counsel's efforts, the jury found Petitioner not guilty on count three. Dkt. No. 234. His convictions on counts one and two were contested in a lengthy appeal filed by defense counsel. *See* Dkt. No. 241. Because Petitioner's allegation that counsel failed to contest the existence of a conspiracy is factually incorrect, as demonstrated by the record, the Court denies his third ground for ineffective assistance of counsel.

### d. Counsel's Alleged Failure to Contest the Sufficiency of the Nexus to Interstate Commerce

With respect to the fourth claimed ground of ineffective assistance of counsel, the record shows that, contrary to Petitioner's allegation, defense counsel did indeed challenge the sufficiency of the nexus to interstate commerce as to count one, which alleged a violation of the Hobbs Act. In his motion for acquittal, counsel representing co-defendant Johnson argued that the government had failed to prove a nexus to interstate commerce. Trial Tr. 559. He repeated this argument during objections to jury instructions. *Id.* at 581–82. Petitioner's counsel Mr. Arif adopted both of these arguments. *Id.* at 570, 599.

Even if defense counsel had not actually challenged the sufficiency of the nexus to interstate commerce, the nexus was sufficiently established by the government according to

Fourth Circuit precedent. Under its "broad construction" of the Hobbs Act, the Fourth Circuit has held that a defendant's reliance on out-of-state materials satisfies the required nexus to interstate commerce. *See United States v. Santoni*, 585 F.2d 667, 670–73 (4th Cir. 1978) (holding corporation's "use of material which necessarily traveled in interstate commerce" to be sufficient nexus to provide jurisdiction for conviction under Hobbs Act). The Fourth Circuit has also held that the mere robbery of a drug dealer satisfies the nexus to interstate commerce element of the Hobbs Act. *United States v. Williams*, 342 F.3d 350, 354–55 (4th Cir. 2003).

Here, Petitioner travelled with the other co-defendants across state lines from Philadelphia, Pennsylvania to Fairfax County, Virginia to commit the robbery at the center of the conspiracy. Trial Tr. 389. Under the "broad construction" of the Hobbs Act adopted by the Fourth Circuit, this movement of conspirators across state lines in furtherance of the conspiracy is sufficient to satisfy the nexus to interstate commerce. The plan to move the drugs recovered from the robbery from Virginia out of state is similarly sufficient. Trial Tr. 192. Moreover, the planned robbery of the cocaine stash house is sufficient in and of itself, pursuant to *Williams*, to satisfy the nexus to interstate commerce. 342 F.3d at 354–55. For the reasons stated above, Petitioner's fourth claim for ineffective assistance of counsel must be denied.

   *e. Counsel's Alleged Failure to Contest a Jury Instruction Relating to the Hobbs Act*

With respect to the fifth claimed ground of ineffective assistance of counsel, as the government points out, it is difficult to discern which of the jury instructions Petitioner alleges should have been challenged. Based upon the cases cited in the petition, however, it appears that he may be referring to instructions pertaining to count two that define crimes of violence and describe the burden of proof.

With respect to the jury instructions on the definition of "crime of violence" for his firearm possession charge, it is true that defense counsel did not object to the government's proposed instructions. There was, however, "no obvious basis" to make such a motion because the proposed instructions accurately stated the law. *See Merica*, 2007 WL 4561298, at *3. Two of the challenged instructions merely recited the applicable statutory language, including the statutory definition of "crime of violence." Dkt. No. 115 at 45, 53. The proposed instruction that stated that robbery qualifies as a crime of violence is also not subject to dispute pursuant to Supreme Court precedent. *See Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S. 9, 22–23 (2006). Moreover, the case cited by Petitioner supports the Court's use of the instruction that, to convict Petitioner of the firearm possession charge, the government would have to prove beyond a reasonable doubt that he "committed the crime of conspiracy to commit robbery as charged in Count 1 of the indictment." *See Luchenburg v. Smith*, 79 F.3d 388, 392 (4th Cir. 1996) ("A proper instruction would inform the jury to only consider the compound handgun offense *after* it convicted on a predicate crime of violence."); Dkt. No. 115 at 46. In light of there being no obvious basis to have objected to the above instructions, defense counsel did not give ineffective assistance for failing to object.

With respect to the proposed instruction on the burden of proof, counsel did in fact object. Trial Tr. 576, 599 (adopting objection argued by counsel for a co-defendant). The Court, however, decided to use the government's proposed instruction because the Fourth Circuit had "found [it] to be an accurate instruction." *Id.* at 576. Accordingly, based upon defense counsel's actual objection to one instruction and objectively reasonable basis for not objecting to the others, Petitioner has failed to show ineffective assistance of counsel for the fifth claimed ground and it must therefore be denied.

*f. Counsel's Alleged Failure to Object that a Conspiracy Cannot Be Formed Between a Criminally Motivated Person and a Government Agent*

With respect to the sixth claimed ground of ineffective assistance of counsel, Petitioner accurately states the law but mischaracterizes the facts. It is indeed "well-established that one who acts as a government agent and enters into a purported conspiracy in the secret role of an informer cannot be a co-conspirator." *United States v. Chase*, 372 F.2d 453, 459 (4th Cir. 1967). Yet it is also true that "a conspiracy may continue even though certain co-conspirators terminate their connection therewith, and may be replaced by other co-conspirators . . . ." *Id.* In this case, the conspiracy was not formed between Petitioner and the UCs. Rather, the conspiracy was formed when Petitioner engaged with the other co-defendants to commit the planned robbery of the stash house. *See* Trial Tr. 228–31, 238–41. Because neither Petitioner nor the co-defendants were government agents at the time they formed the conspiracy, there was no factual basis for objecting that a conspiracy could not have been formed on the basis that Petitioner alleges. Defense counsel was thus objectively reasonable and not ineffective for failing to object on this basis. The sixth claimed ground thus fails the first prong of *Strickland* and is therefore denied.

*g. Counsel's Alleged Failure to Argue the Existence of Multiple, as Opposed to a Single, Conspiracy*

With respect to the seventh claimed ground of ineffective assistance of counsel, the facts in the record demonstrate that defense counsel was not objectively unreasonable for failing to allege the existence of multiple conspiracies. The Fourth Circuit has stated that a "single conspiracy exists where there is 'one overall agreement'... or 'one general business venture.'" *United States v. Leavis*, 853 F.2d 215, 218 (4th Cir. 1988) (citations omitted). In making such a determination, factors to consider include "the overlap of key actors, methods, and goals," as well as whether the operations were headquartered at the same location and whether the

"methods and goals of the conspiracy remained the same throughout its activities." *Id.* These factors favor finding a single conspiracy in this case. The defendants shared the goal of robbing a cocaine stash house. The method of using a "crew," which included Petitioner, to rob the stash house using firearms remained the same throughout the conspiracy. The key actors also remained the same. *See* Trial Tr. 202–03, 226–36. Moreover, there was a single attempt to commit the robbery. *Cf. Leavis*, 853 F.2d at 218–19 (rejecting defendant's claim that there were multiple conspiracies despite the multiple attempts to import drugs). Under the facts of this case and Fourth Circuit precedent, defense counsel was not objectively unreasonable in failing to allege multiple conspiracies. Petitioner's seventh claimed ground thus fails the first prong of *Strickland* and must be denied.

### h. Counsel's Alleged Failure to Argue an Entrapment Defense

With respect to the eighth claimed ground of ineffective assistance of counsel, defense counsel did in fact attempt to raise the entrapment defense. *See* Dkt. No. 105 (Order stating that all defendants had filed notice of an intent to raise affirmative defense of entrapment); *see also* Dkt. No. 134 (defense counsel's objection to the government's motion in limine to preclude his entrapment defense). After oral argument on February 25, 2011, the Court denied the government's motion but effectively warned defendants that the entrapment defense was legally unavailable to them, as the Court was "unable to locate law favorable to the Defendants' position ... [that] a defendant who never had contact with a government agent prior to preparing to engage in a criminal offense could prove they were induced to commit the offense by government overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." Dkt. No. 143 (citations and internal quotation marks omitted). Here, Petitioner did not have contact with a government agent until the day of his

arrest. Trial Tr. 294. Based upon his preparation and participation in the conspiracy prior to any government contact, then, the defense of entrapment is not applicable. *See United States v. Squillacote*, 221 F.3d 542, 573 (4th Cir. 2000) ("[T]here is no defense of private entrapment; a defendant who was induced to commit a crime by a private party, without any government involvement, cannot claim that he was entrapped").

Furthermore, the Court stated in its March 10, 2011 Order that if defendants chose to raise the entrapment defense at trial, it would permit the government to introduce admissible evidence of prior criminal history. Dkt. No. 143. The government had already filed its notice of intent to introduce Petitioner's prior convictions for conspiracy to distribute, distribution of, and possession with intent to deliver a controlled substance. Dkt. No. 110. Under these facts, it was clearly objectively reasonable for defense counsel to forego a likely unavailable defense in light of the risk posed by the government's proposed introduction of such unfavorable evidence. Thus, because the defense was legally unavailable to Petitioner, defense counsel's failure to raise it at trial was not objectively unreasonable and certainly did not prejudice the outcome. Having failed both prongs of *Strickland*, Petitioner's eighth ground for ineffective assistance of counsel is denied.

### i. Counsel's Alleged Failure to Contest that the Second Element of the Hobbs Act Conspiracy Was Not Proven Beyond a Reasonable Doubt

With respect to the ninth claimed ground of ineffective assistance of counsel, Petitioner's allegation—that defense counsel failed to challenge the sufficiency of the evidence as to the Hobbs Act conspiracy charge—is factually incorrect. Defense counsel contested all charges against Petitioner, moved for acquittal after the government rested, argued to the jury that the government had failed to prove its case beyond a reasonable doubt, and appealed Petitioner's convictions on counts one and two. *See* Dkt. Nos. 155, 175, 178, 185, 241; *see also* Trial Tr.

668–77. Because defense counsel did indeed challenge whether the government had met its burden of proof, Petitioner cannot show any objective unreasonableness to satisfy his *Strickland* claim. The ninth ground for ineffective assistance must therefore be denied.

   j. *Counsel's Alleged Failure to Seek Dismissal of the Indictment Under the "Outrageous Government Conduct" Doctrine*

With respect to Petitioner's tenth and final claimed ground for ineffective assistance of counsel, defense counsel was not objectively unreasonable in failing to raise the outrageous government conduct doctrine under the facts of this case. Notably, the Fourth Circuit has never held that a defendant's due process rights were violated by the government's outrageous conduct. To provide relief, the doctrine requires conduct "so outrageous as to shock the conscience of the court," which will only occur in "rare cases." *United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007) (citations omitted). This reasoning is in line with Supreme Court precedent, which has "greatly limited" the application of the doctrine, particularly in drug conspiracy cases where government agents are involved. *See United States v. Hasan*, 718 F.3d 338, 342–43 (4th Cir. 2013) (citing *Hampton v. United States*, 425 U.S. 484 (1976)). In *Hampton*, the Supreme Court held that the defendant's due process rights had not been violated under the outrageous government conduct doctrine where a government informant sold heroin to the defendant, who then sold it to government agents. 425 U.S. at 489–90.

Given the highly circumscribed application of the doctrine under Supreme Court and Fourth Circuit precedent, defense counsel cannot be said to have been objectively unreasonable in failing to raise it. Similarly, case law indicates that the outcome would not have been different even if counsel had raised it, and therefore Petitioner fails to show any prejudice. Accordingly, Petitioner's tenth and final ground for ineffective assistance of counsel must also be denied.

## CONCLUSION

For the reasons stated above, and for good cause, it is hereby:

ORDERED that Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 348) is **DENIED WITH PREJUDICE.**

This is a final order for purposes of appeal. To appeal, Petitioner must file a written notice of appeal with the Clerk's Office within sixty (60) days of the date of this Order. Fed. R. App. P. 4(a)(1)(B). A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order that Petitioner wishes to appeal. Petitioner need not explain the grounds for appeal until so directed by the court. Petitioner must also request a certificate of appealability from a circuit justice or judge. *See* 28 U.S.C. § 2253; Fed. R. App. P. 22(b). For the reasons stated above, this Court expressly declines to issue such a certificate.

November 20, 2014

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge